UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TEDDY ARMSTRONG, | ) | 1:05cv1374 AWI DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATION REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**BACKGROUND**

Plaintiff Teddy Armstrong ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge, for findings and recommendation to the District Court.

1

**FACTS AND PRIOR PROCEEDINGS**[1]

Plaintiff filed his application for disability insurance benefits on March 11, 2002, and on February 21, 2003, he protectively filed an application for SSI benefits. AR 4, 74-77. He alleged that he had been disabled since December 28, 2001, due to back pain, degenerative disc disease, and rheumatoid arthritis. AR 82. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 57-60, 63-67, 68. On December 2, 2003, ALJ Michael Haubner held a hearing. AR 231-282. ALJ Haubner denied benefits on January 13, 2004. AR 17-29. On August 25, 2005, the Appeals Council denied review. AR 6-10.

Hearing Testimony

On December 2, 2003, ALJ Haubner held a hearing in Fresno, California. Plaintiff appeared with his attorney, Leah Cole. Vocational expert ("VE") Cheryl Chandler also appeared and testified.

Plaintiff testified that he was 47 years old at the time of the hearing. He completed the twelfth grade and worked in construction doing heavy equipment operation. He explained that he picked December 28, 2001, as the onset date because that was the day he talked to his attorney. AR 238-239. Plaintiff worked part-time from July to November, 2002, for a total of about four to five weeks. AR 240.

Plaintiff lives with his two children, ages 12 and 16. They take care of themselves. AR 241. Plaintiff dresses himself most of the time, showers and bathes himself, shaves himself, feeds himself and usually cooks dinner. He also does simple meal preparation two to three times a day. AR 242. He doesn't do any housework and goes shopping about once a month. AR 243.

Plaintiff testified that he has a driver's license, but thought it was suspended because of money owed in child support. AR 244. He drives about once a week, and doesn't know when his license was suspended. Plaintiff has not had a drink in about 20 years, but is on methadone. AR 245.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff denied having problems getting along with people. He was using a cane at the hearing and explained that he didn't think he needed one but his doctor did. AR 246. He's had the cane for about a year and uses it just about every time he walks and all the time when he goes out of the house. AR 246. Plaintiff believed he could be on his feet for an hour to an hour and a half. When he sits, he adjusts himself every 15 or 20 minutes. When he can shift in his chair, he can sit for 20 minutes at a time. He thought he could lift ten pounds occasionally. AR 247.

When questioned by his attorney, Plaintiff testified that his back and his legs were his worst problems. He has constant numbness in both legs, from his hips to his feet. AR 252-253. He said his right knee needs reconstructive surgery but he has not had the surgery yet because, in part, he has no medical insurance. Plaintiff could not remember if he had an MRI because he's been to so many different doctors. AR 254. With his cane, he thought he could walk one block; without his cane, he could not go far because his leg and knee would give out. AR 255. He wears a brace on his right knee all the time when he leaves the house. AR 255.

Plaintiff testified that he has constant pain in his back that rates at about a six on a scale of one to ten, even after his methadone. AR 256. The balls in his shoulders are gone and his arms pop out. AR 257. His arms and hands go to sleep all the time. He uses acupuncture, which helps. Plaintiff takes an antidepressant, uses methadone three to four times a day, and uses Vicodin on a bad day. His medications cause memory loss and make it difficult to concentrate. AR 260.

His shoulder problems made reaching above shoulder level difficult and he did not think he could perform a job with that requirement. AR 261.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age and education, who had to avoid all heavy lifting, repetitive bending and stooping, and prolonged sitting (meaning that he can stand and occasionally sit). This person could not perform Plaintiff's past relevant work, but could perform light, unskilled work. The sitting limitation would preclude sedentary work. AR 266-268. If this person was also limited to simple one and two step tasks, he could not perform Plaintiff's past relevant work. This person could perform

unskilled light jobs, eroded by 50 percent. Such positions include hand packer and assembly. AR 268-269.

For the second hypothetical, the ALJ asked the VE to assume a person that could lift and carry 40 pounds occasionally, ten pounds frequently, but could not use the left upper extremity above shoulder level and could not lift greater than ten pounds with the left upper extremity from the waist to the shoulder. This person can infrequently kneel, squat, and stair climb. This person could not perform Plaintiff's past relevant work, but could perform unskilled light jobs, eroded by fifty percent for the overhead reaching preclusion. Such positions include cashiering at a theater or hospital, where stocking activities are not required (40,000 in California and 400,000 nationally), assembly work (25,000 in California and 250,000 nationally), and hand packaging (12,000 in California and 120,000 nationally). AR 269-270, 274.

For the third hypothetical, the ALJ asked the VE to assume a person who could lift and carry ten pounds occasionally, sit for 20 minutes at a time, and be on their feet for one hour to one and one half hours at a time. This person would need to recline six to eight hours in a day. This person could not perform Plaintiff's past relevant work or any other positions in the national economy. AR 271.

For the fourth hypothetical, the ALJ asked the VE to assume a person who could not perform prolonged walking or standing, could not lift over 25 pounds, could not perform repetitive bending and stooping, and could not reach above shoulder level. This person could not work around moving machinery or extremes in hot or cold, drive, kneel or squat. This person could perform unskilled, sedentary work, such as cashiering (7,000 in California and 70,000 nationally) or telemarketing (2,800 in California and 28,000 nationally) and assembly (5,000 in California and 50,000 nationally). If this person could not lift over 15 pounds, the same positions would be available. AR 275-278.

For the fifth hypothetical, the ALJ asked the VE to assume a person who could not stand for more than 30 minutes at a time, sit for 30 minutes at a time or lift more than 25 pounds. This person could not perform Plaintiff's past relevant work or any other work. AR 280.

Medical Evidence

Plaintiff underwent an MRI of his lumbar spine on July 12, 1999. The MRI revealed mild degenerative disc disease at L4-5 and L5-S1, but was otherwise unremarkable. AR 129. X-rays taken the same day were normal. AR 130.

An MRI taken on November 20, 2000, revealed no evidence of disc herniation, but showed degenerative disc disease extending from T5-T6 through T10-T11 with minimal anterior marginal spurs without disc herniation. There was slight foraminal stenosis of T6-T7 and slight degenerative osteoarthritis of costovertrebral junctions. AR 131.

On October 15, 2001, Plaintiff saw his treating physician, Randall K. Yee, M.D. Upon examination, Plaintiff had pain in his back from L2 through L5-S1. Dr. Yee diagnosed chronic low back pain secondary to degenerative joint disease and myofascial pain, and depression. Plaintiff was taking Methadone, Toradol and Remeron, and indicated that the Toradol injection he received helped for at least five weeks. AR 135.

On March 18, 2002, Plaintiff's treating chiropractor completed a Doctor's First Report of Occupational Injury or Illness and opined that Plaintiff could perform his usual work despite his back pain. AR 137-139.

Plaintiff saw Dr. Yee on March 23, 2002, to have disability forms filled out and get a prescription for Vicodin. Plaintiff was in no acute distress but had low back pain from L1-L5 with myalgia. He prescribed numerous medications and told Plaintiff to consider physical therapy. AR 156-157. Dr. Yee further indicated that Plaintiff could not walk/stand for a prolonged period, bend/stoop repetitively, reach above the shoulder, kneel or squat, work around or operate moving machinery, climb stairs or ladders, push and pull, or use his shoulders and low back. AR 158.

Plaintiff underwent a consultive examination by Rustom R. Damania on July 2, 2002. Plaintiff complained that both shoulders have hurt for the past ten years, that he has had low back pain for more than ten years, that he has had chronic pain in his left hip for ten years, that both hands swell occasionally, turn red and hurt, and that he feels generalized bilateral symmetrical stiffness in the morning for about four hours. He described his back pain as dull and sharp, but

5

indicated that it improves with medication.  Upon examination, Plaintiff presented as a tall, well-built, well-nourished male in some discomfort and distress.  He did not use an assistive device and declined to do multiple range of motion testing of multiple joints because he had "too much pain."  Both shoulder joints were tender, the left more than the right, and there were fine crepitations palpable in the left shoulder.  Plaintiff declined to do a shoulder shrug test and indicated that he just could not move his left shoulder.  His hip joints were difficult to examine, although there was no obvious deformities, ankylosis or subluxations.  His knees and feet were normal.  There was no tenderness, spasms or deformities in his cervical spine, but Plaintiff was very apprehensive about range of motion testing.  His thoracic spine was normal.  There was minimal tenderness on percussion of his lumbosacral spine, and no spasms or deformities.  He had no difficulties getting on and off the examination table, straight leg rasing was normal, and deep tendon reflexes were normal.  There was no sensory impairment.  Plaintiff declined to do range of motion testing, stating that he "couldn't do it.  It is not going to happen."  Plaintiff walked very well, with no limp or assistive device.  He kept his left arm in an immobile position throughout the examination, and refused to walk on his toes and heels.  Plaintiff also declined to do a squat.  AR 140-144.

Dr. Damania diagnosed multiple arthralgias, and possible osteoarthritis, particularly of the shoulders and lower back area.  The osteoarthritis diagnoses was based mostly on Plaintiff's subjective report, as the objective findings were limited due to Plaintiff's reluctance to do range of motion testing.  After reviewing the MRI and x-rays, Dr. Damania opined that Plaintiff should have no exertional or postural limitations.  AR 144.

Also on July 2, 2002, Plaintiff saw Shireen R. Damania, M.D., for a consultive psychiatric examination.  Plaintiff complained of depression but indicated that Paxil helped.  Plaintiff denied suicidal ideations and indicated that he was very active in his church.  He has difficulty sleeping because of pain.  Plaintiff explained that on a typical day, he watches television and fixes simple means.  His pain level determines how long he stays in bed, but his pills help and make him feel "better."  Upon mental status examination, there were times when

he appeared to be mildly depressed and he admitted that he felt depressed because of his situation and the fact that he no longer could do the kind of work he used to do.

Dr. Damania diagnosed adjustment disorder with depressed mood. She opined that he could "certainly" understand, remember and carry out simple as well as one and two step job instructions, and respond appropriately to co-workers, supervisors and the general public. Plaintiff's interpersonal skills and social functioning were good, and he could respond appropriately to usual work situations and deal with changes in a routine work setting with normal supervision. Any limitations would be a result of the subjective allegations of pain. AR 145-149.

On July 16, 2002, Plaintiff was treated by Dr. Yee. He had pain in his left shoulder with limited range of motion, and pain, swelling, stiffness and weakness in his left hip with limited range of motion. Dr. Yee completed a work status form and indicated that Plaintiff was indefinitely totally disabled. He could not walk/stand for a prolonged period, lift over 25 pounds, bend/stoop repetitively, reach above the shoulder, kneel or squat, work around or operate moving machinery, push and pull, or use his lumbosacral spine, left shoulder or left hip. AR 151-152.

On September 30, 2002, State Agency physician Allen Middleton, Ph.D., completed a Psychiatric Review Technique Form. He opined that Plaintiff had an adjustment disorder. Plaintiff had mild to moderate restrictions in daily living, and mild to moderate difficulties in maintaining concentration, persistence or pace. AR 167-180. This was affirmed in April 2003. AR 167. In a Mental Residual Functional Capacity Assessment completed the same day, Dr. Middleton opined that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions, but was not limited in any other way. Dr. Middleton believed that Plaintiff could understand, remember and carry out simple instructions, maintain concentration/attention for two hour increments, be socially appropriate, and adapt. AR 181-184. This was affirmed in April 2003. AR 183.

On October 1, 2002, State Agency physician Carmen E. Lopez, M.D., completed a Physical Residual Functional Capacity Assessment. Dr. Lopez opined that Plaintiff could occasionally lift/carry 50 pounds, 25 pounds frequently, stand and/or walk for six hours and sit

for six hours. Plaintiff could not perform repetitive pushing/pulling with his upper or lower extremities, and could not perform repetitive pedal movements with his left lower extremity. He could occasionally stoop and crouch. Plaintiff could not perform repetitive overhead reaching with his left upper extremity. AR 185-192.

Plaintiff saw Brendan McAdams, M.D., on October 2, 2002, for an orthopedic evaluation related to his workers' compensation claim. On physical examination, Plaintiff appeared to be in a considerable amount of discomfort. In the waiting room, Plaintiff walked with a slow, deliberate gait, but did not appear to be in any great discomfort. Upon sitting down in the examining room he started moaning and showing manifestations of discomfort. During the examination, Plaintiff sat up, stated he was not going to take any more and that the compensation company can shove it, dressed and left. Based on the examination and review of the medical records, Dr. McAdams concluded that there was no evidence of an industrial injury and that Plaintiff was manipulating his history and the physical examination. Dr. McAdams found no reason for any temporary disability or further treatment. He also questioned Plaintiff's use of methadone, particularly four times a day, since it is highly addictive and there did not appear to be a reason for it. Dr. McAdams could not find a reason as to why Plaintiff was on such a large amount of medication, nor could he find a reason to restrict him from activities. AR 220-224.

Marjorie Oda, M.D., conducted a Qualified Medical Examination on January 29, 2003. Plaintiff complained of constant pain in the right ribcage that radiated into the right mid and low back and pelvic pain that radiated into his left leg. He also complained of constant numbness in his left leg, which is worsened by sitting. Upon physical examination, Plaintiff was in no acute distress but moved stiffly and slowly. He had mild tenderness to palpation of his cervical spine but range of motion was normal. He had decreased lumbar lordosis in his thoracolumbar spine and had difficulty getting up out of a chair. There was mild to moderate tenderness to palpation in his ribcage as well as mid-thoracic midline pain. There was no pain in the lumbar region, but there was tenderness to deep palpation over the left lateral pelvis. Range of motion in the lower extremities was fifty percent of normal. Plaintiff had an antalgic gait and was unable to walk on his heels or toes. There was no evidence of rheumatoid arthritis despite Plaintiff's report. Dr.

Oda diagnosed thoracolumbar strain and chronic pain syndrome. She opined that Plaintiff would be precluded from prolonged sitting, heavy lifting and repeated bending and stooping. AR 193-200.

Plaintiff underwent shoulder and hip x-rays on March 4, 2003. The x-rays were negative. AR 201.

On March 4, 2003, Plaintiff underwent an orthopedic consultation performed by Troy Smith, M.D. Plaintiff complained of low back pain with radiation to both legs, left hip pain and left shoulder pain. Plaintiff was in no acute distress but walked with a slight limp on the right. He could stand on his hells and toes well with some difficulty. Range of motion in the cervical spine was within normal limits but range of motion in the lumbar spine was limited. There was mild discomfort in his back when he got on and off the examining table. There was moderate tenderness to percussion in the lumbar area of the spine and over the sciatic notch bilaterally. Range of motion in the shoulders and all other joints was within normal limits. Examination of his hip revealed no gross abnormalities and he had no limitation of movement of the hip. He had tenderness over the anterior acromial area of the left shoulder and pain with movement, although there was no crepitation with movement. Grip strength was 5/5 and motor strength was normal.

Dr. Smith diagnosed impingement syndrome left shoulder, symptomatic, degenerative lumbar disc disease by history and MRI, radiculitis secondary to his degenerative lumbar disc disease, and arthritis of the right knee by history. He opined that Plaintiff could not perform work that required repetitive bending or heavy lifting. He could lift 40 pounds occasionally and 10 pounds frequently, and could sit, stand and walk for six hours. He could not use his left arm above shoulder level and could not use it for repetitively above the shoulder. He could not lift over 10 pounds from the waist to the shoulder. He could infrequently kneel, squat or climb stairs. AR 202-206.

On April 1, 2003, State Agency physician Dr. Sharbaugh completed a Physical Residual Functional Capacity Assessment. Dr. Sharbaugh opined that Plaintiff could occasionally lift/carry 20 pounds, 10 pounds frequently, stand and/or walk for at least two hours, and could sit for six hours. Plaintiff had to avoid frequent and forceful pushing/pulling with his upper

extremities and could not perform repetitive pedal movements with his left lower extremity. He could occasionally stoop and crouch. Plaintiff could not perform repetitive overhead reaching with his left upper extremity. He could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but could never climb ladders, ropes of scaffolds. He had to avoid frequent overhead reaching and above shoulder level reaching with the left upper extremity. He had to avoid concentrated exposure to hazards and walking on uneven terrain. AR 207-214.

Plaintiff returned to Dr. Yee on April 2, 2003, needing his medication refilled. At that time, he was taking Celebrex, Hydrocodone with acetaminophen, Norco, Valium, Vicodin, Diazepam, Methadone, and Paxil. AR 225. On examination, Plaintiff's thoracic and lumbar pain was aggravated by bending, turning and lifting. He had limited range of motion. Dr. Yee noted that Plaintiff did not have depression, only anxiety and stress secondary to marital problems. His gait and station were normal. He diagnosed a herniated cervical disc, herniated lumbar disc (multiple sites) and chronic pain syndrome. He refilled Plaintiff's medications and told him to consider acupuncture and physical therapy. AR 225-226.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine with radiculitis, left shoulder impingement, and adjustment disorder with depressed mood. After reviewing the medical evidence and Plaintiff's testimony, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently, with no prolonged sitting and no repetitive bending and stooping. AR 24. He found Plaintiff's subjective complaints not entirely credible. Plaintiff was unable to perform his past relevant work, but using the Medical Vocational Guidelines and the testimony of the VE, the ALJ concluded that Plaintiff could perform a significant range of light work. AR 27-28.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial

evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[2] Here, the ALJ determined that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset of disability;(2) has an impairment or a combination of impairments that is considered "severe" (degenerative disc

---

[2] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

disease of the lumbar spine with radiculitis, left shoulder impingement, and adjustment disorder with depressed mood) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; and (5) retains the RFC to perform a significant range of light work.  AR 27-28.

Plaintiff contends that the (1) the ALJ did not properly analyze the treating physician's opinion; (2) the ALJ did not fully and fairly review Plaintiff's testimony; and (3) the RFC is not supported by substantial evidence.

**DISCUSSION**

A.  Treating Physician's Opinion

Plaintiff disagrees with the ALJ's decision to give Dr. Yee's opinion little weight, arguing that his reasons for doing so are without merit.

It is true that the medical opinion of a claimant's treating physician is entitled to "special weight." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v. Heckler*, 751 F.2d 1082, 1088 (9th Cir. 1985).  Reliance on the opinion of the treating physician is based not only on the fact that he is employed to cure but also on his greater opportunity to observe and know the patient as an individual.  However, a treating physician's opinion is not conclusive as to a physical condition or the ultimate issue of disability. *Magallanes*, 881 F.2d at 751, and *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  An ALJ may reject a contradicted treating physician's opinion on the basis of clear findings that set out specific, legitimate, reasons for the rejection. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A statement by a physician indicating a claimant is "disabled" does not mean that the Secretary will concur, absent review of medical findings and other evidence. 20 C.F.R. 416.927(e).  "Conclusory opinions by medical experts regarding the ultimate question of disability are not binding on the ALJ." *Nyman v. Heckler*, 779 F.2d 528 (9th Cir. 1985).

Here, the ALJ discredited Dr. Yee's opinion for a number of reasons.  First, he explained that his check-the-box forms and his opinion of "disability for 1 year" lack signs, symptoms or other bases.  AR 23.  Indeed, the documents upon which Dr. Yee expresses his opinions as to

Plaintiff's limitations are versions of check the box forms. The forms are Occupational Medicine Work Status forms that required Dr. Yee to check the applicable limitations. AR 151, 158. The forms do not set forth the objective findings in support of the restrictive limitations. In fact, Dr. Yee's treating notes reveal only pain and limited range of motion, and were otherwise normal. The only two MRI reports in the record reveal mild degenerative disc disease with no evidence of disc herniation. AR 129-131. X-rays of his spine were normal. AR 130. A brief and conclusionary form opinion that lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Although there may have been some objective findings that arguably could have supported Dr. Yee's restrictions, such as the ones pointed out by Plaintiff, the fact remains that Dr. Yee's findings and opinions were in sharp contrast with the majority of the medical record, including the opinions of Dr. Oda and Dr. Smith. The ALJ is responsible for resolving conflicts in the medical evidence, and the court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes,* 881 F.2d at 750. Here, the ALJ gave greater weight to the opinion of examining physician Dr. Smith, and he was entitled to do so. AR 24; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that contrary opinion of examining source constituted "specific and legitimate reason" for rejecting opinion of a treating source); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.").

The ALJ also noted that Dr. Yee's opinion violated SSR 96-5p, which states that a medical opinion that a claimant is disabled or unable to work is a legal finding reserved exclusively for the Commissioner. *See also* 20 C.F.R. § 416.927(e). As the ALJ found, Dr. Yee's opinions that Plaintiff was "totally disabled indefinitely" and "totally disabled for 1 year" are opinions relating to the ultimate finding of disability and are therefore reserved for the ALJ. As previously explained, a treating physician's opinion is not conclusive as to a physical

13

condition or the ultimate issue of disability. *Magallanes*, 881 F.2d at 751; *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

The ALJ further explained that although he had requested additional information from Dr. Yee, the information was not provided. For instance, the ALJ inquired about Dr. Yee's specialty, an explanation of specific limitations, an onset date and why this date was chosen, how often he treated Plaintiff and if this treatment was part of a treatment team, and the details of any consultations with team members. AR 24, 275-276, 279, 281-282. Again, the ALJ need not accept opinions that he deems unsupported. This is especially true where the ALJ asks for clarification from the claimant but does not receive it.[3] *See eg., Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998).

Insofar as Plaintiff faults the ALJ for discrediting Dr. Sharbaugh's opinion because the restrictive opinion was based on the two forms completed by Dr. Yee, his argument is without merit. As explained above, the ALJ correctly discredited Dr. Yee's opinion and was therefore entitled to discredit any subsequent opinion relying thereon.

B. <u>Plaintiff's Testimony</u>

Plaintiff next argues that the ALJ gave inadequate reasons for rejecting his testimony.

The ALJ is required to make specific findings assessing the credibility of Plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination

---

[3] Plaintiff appears to argue that the ALJ erred by requesting additional information from Plaintiff because the ALJ cannot pass the burden to clarify to Plaintiff. However, the ALJ's request for additional information *from Plaintiff* satisfies the ALJ's burden in attempting to clarify the record. It is Plaintiff's burden to produce full and complete medical records, not the Commissioner's. *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999). However, when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence, the ALJ has a duty to develop the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001). The ALJ may discharge this duty in one of several ways, including subpoenaing claimant's doctors, submitting questions to claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Id.*

with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

Here, the ALJ made specific findings in assessing Plaintiff's credibility. He first noted that Plaintiff's complaints were out of proportion to the objective findings. AR 25. Although the ALJ may not discredit allegations of the severity of the pain solely because the evidence does not support Plaintiff's statements, he is entitled to take the objective evidence into consideration. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citing *Bunnell v. Sullivan,* 947 F.2d 341, 343 (9th Cir. 1991)(*en banc*)). After his review of the evidence, the ALJ noted the following: (1) there was no evidence to support Plaintiff's claim of rheumatoid arthritis; (2) despite Plaintiff's testimony that Dr. Yee prescribed a cane, there was no objective evidence that a cane was necessary; (3) Plaintiff did not use a cane during the consultive evaluations; (4) although Plaintiff testified that he had a limp for the past 10 years, he walked without a limp at Dr. Damania's examination and only exhibited a slight limp at Dr. Smith's evaluation; (5) there was no evidence to support his claim that the sockets in his arms are gone and his arms pop out; and (6) there was no evidence to support his allegation that his arms fall asleep all the time. AR 25. Although Plaintiff disagrees with the ALJ's analysis of the objective evidence, it does not alter the fact that the ALJ was entitled to rely on the objective findings in analyzing Plaintiff's subjective complaints.

The ALJ next discussed Plaintiff's treatment. He explained that Plaintiff receives only medication and chiropractic therapy. There is no evidence of physical therapy, he has not had shoulder surgery, he is being treated by his family doctor and a chiropractor rather than an

15

1 orthopedist or specialist, and there is no evidence of mental health treatment despite his
2 complaints. AR 25-26. The ALJ concludes, "[i]t is reasonable to assume that if the claimant
3 were experiencing the disabling problems alleged, he would have received more aggressive
4 treatment." AR 26. Plaintiff's treatment history was certainly a valid consideration. *Burch v.*
5 *Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (that the claimant's "pain was 'not severe enough to
6 motivate [her] to seek [these forms of] treatment,' even if she sought some treatment, is powerful
7 evidence regarding the extent to which she was in pain.").

8       Plaintiff argues that the ALJ failed to consider the "significance" of Plaintiff's methadone
9 and other medications, his use of a cane, and his attempt at injection therapy. While there is
10 evidence of this in the record, it does not render the ALJ's analysis of the record inadequate. It is
11 the ALJ's duty to weigh the medical record and resolve conflicts therein. *Magallanes v. Bowen*,
12 881 F.2d 747, 750 (9th Cir. 1989). The ALJ's analysis of Plaintiff's treatment is certainly
13 supported by substantial evidence.

14       Next, the ALJ discussed Plaintiff's failure to cooperate at his consultive examinations,
15 Dr. McAdams' opinion that Plaintiff was manipulating his history as well as the physical
16 examination, and Plaintiff's failure to provide a concrete psychiatric history at the consultive
17 psychiatric evaluation. AR 26. The ALJ also set forth Plaintiff's evasive and nonresponsive
18 manner at the hearing. AR 26. For example, the ALJ noted that Plaintiff first contended that he
19 did not know how long his driver's license had been suspended, but later admitted it had been
20 suspended for two months (although he still testified that he drives once a week). Plaintiff also
21 gave inconsistent statements as to the amount of methadone he uses. AR 26. The ALJ is entitled
22 to use factors relating to Plaintiff's reputation for truthfulness in evaluating his credibility, and
23 may make inferences logically flowing from the medical evidence. *Thomas,* 278 F.3d at 958;
24 *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

25       Finally, the ALJ explained that Plaintiff engaged in a wide range of daily activities.
26 According to his testimony, he cooks/prepares meals once a day, does light house cleaning,
27 dresses, bathes and feeds himself, does simple meal preparations two to three times per day, goes
28 grocery shopping once a month, reads magazines and watches television. AR 26. The ALJ

concluded that his activities of daily living, "coupled with his ability to work after the alleged onset date, albeit not at a substantial gainful activity level, denote a level of ability that is out of proportion to his allegation of total disability."[4] AR 26. Plaintiff's daily activities were a valid consideration. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Plaintiff contends that the ALJ should have credited, or at least discussed, the Third Party Questionnaire completed by his mother, Peggy Armstrong, as well as Plaintiff's two questionnaires. AR 103-108, 109-114, 123-125. As to Plaintiff's two questionnaires, the ALJ indirectly addressed them in his analysis of Plaintiff's credibility. The ALJ should have, however, at least addressed Ms. Armstrong's questionnaire. Lay witness testimony as to a claimant's symptoms is competent evidence which the Commissioner must take into account. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). However, given the overall medical record and the ALJ's remaining credibility analysis, which was proper, the error was harmless at best. *See eg., Batson v. Barnhart*, 359 F.3d 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error).

C.   ALJ's RFC Finding

Finally, Plaintiff contends that the RFC is not supported by substantial evidence. Specifically, he argues that the ALJ set forth little explanation in support of his RFC and that the hypothetical question proposed to the VE led the VE to an incorrect conclusion.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p. In assessing a claimant's RFC, the ALJ may rely upon the state agency physician's findings as to claimant's ability. 20 C.F.R. §§ 404.1513(c), 404.1527(f)(2)(I), 416.913(c), 416.927(f)(2)(I).

---

[4] Plaintiff points to his attempt at significant earnings and argues that this should have enhanced his credibility. His ability to work after his alleged onset date, though, cuts both ways and the ALJ was entitled to view it in the light most consistent with the overall record.

1   Plaintiff's contention that the ALJ set forth little rationale for the RFC finding is based
2   mainly his characterization of the opinions of Dr. Yee and Dr. Sharbaugh as substantial evidence
3   for a more limited RFC.  Plaintiff's argument therefore does not attack the current RFC finding
4   but rather asserts that there is evidence to support a different RFC finding.  It is not the province
5   of the Court to determine whether another RFC may have been possible.  In any event, the Court
6   has already determined that the ALJ correctly analyzed the medical evidence, including Dr. Yee's
7   opinion and the opinions of the physicians that ultimately gave rise to the RFC finding.

8   Plaintiff also challenges the hypothetical questions posed to the VE, contending that they
9   did not include a sitting restriction.  Plaintiff argues that the hypothetical should have included a
10  "sit/stand option, e.g., no prolonged sitting."  He also contends that there should have been a
11  restriction in reaching based on Plaintiff's shoulder problems.  However, contrary to Plaintiff's
12  argument, the first hypothetical included a limitation to no prolonged sitting.  AR 266-267.  The
13  VE testified that this limitation would preclude sedentary jobs, but that it would allow
14  performance of light work, eroded by 50 percent for the limitation to simple, repetitive one and
15  two step tasks.  AR 267.  Similarly, the ALJ also set forth hypotheticals that included limitations
16  in reaching.  AR 269, 275.  In response, the VE testified that this person could perform work.
17  AR 270, 277.  The ALJ was entitled to rely on the VE's responses to the hypothetical questions,
18  as they were based on medical assumptions supported by substantial evidence in the record.
19  *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-1165 (9th Cir. 2001).

20  As part of his argument, Plaintiff contends that new evidence exists that supports his
21  claim of disability since the alleged onset date.  He attaches records dated April 12, 2004,
22  through October 15, 2005, and argues that these records "bring into perspective the nature of
23  Plaintiff's impairments and the limitations caused thereby."  Opening Brief, at 9.

24  Pursuant to the provisions of 42 U.S.C. § 405 (g), as amended in 1980, a case may be
25  remanded to the Secretary if the new evidence submitted is material, and there is good cause for
26  the failure to incorporate it into the record.  In order to be "material," the new evidence must be
27  probative of the claimant's condition as it existed during the relevant time period -- on or before
28  the administrative hearing.  *Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509,

511 (9th Cir. 1987).  In addition, the claimant must prove to the reviewing court's satisfaction that there exists a "reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination had it been before him." *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380 (9th Cir. 1984).  The good cause requirement is satisfied if the claimant could not have obtained the medical evidence at the time of the administrative proceeding, even though the evidence surfaces after the Secretary's final decision. *See Embry v. Bowen*, 849 F.2d 418, 423-24 (9th Cir. 1988); *Booz, supra*, 734 F.2d at 1380.

Despite Plaintiff's argument, the submitted evidence is not material because it is not probative of the relevant time period- the period on or before the ALJ's January 13, 2004, decision.  *See Marci v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (medical opinion sought after denial of claim is less probative).  To the extent that Plaintiff believes that his condition has worsened since the relevant time period, he is free to file a new claim.  *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 511-512 (9th Cir. 1987) (explaining that if a plaintiff wishes to rely on post-decision evidence, he may file a new application for benefits based on that new evidence).

## RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Jo Anne B. Barnhart and against Plaintiff Teddy Armstrong.

///
///
///
///
///
///

These findings and recommendations will be submitted to the Honorable Anthony W. Ishii, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **January 8, 2007**              **/s/ Dennis L. Beck**
3b142a                                  UNITED STATES MAGISTRATE JUDGE